Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1803 | **DATE** | 6/7/2001 |
| **CASE TITLE** | JONATHON LANDON vs. OSWEGO UNIT SCHOOL DISTRICT #308 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is denied. Pretrial conference held.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN -8 2001 | |
| | Notified counsel by telephone. | | date docketed | 104 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN -7 PM 5:37 | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JONATHON LANDON, a minor, by and through )
his mother, DONNA MUNICI, )
)
    Plaintiff, )
) No. 00 C 1803
v. )
)
OSWEGO UNIT SCHOOL DISTRICT # 308, ) Judge John W. Darrah
)
    Defendant. )

DOCKETED JUN - 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jonathon Landon, a minor, by and through his mother and next friend, Donna Munici, commenced an action against defendant, the Oswego Unit School District # 308, alleging the defendant discriminated on the basis of sex and retaliated against plaintiff in violation of Title IX of the Educational Amendments of 1972 and intentionally inflicted emotional distress upon plaintiff. Before this Court is defendant's Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (*Miller*). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

I. Background

Plaintiff is a student living within the territorial boundaries of the defendant. (Def.'s 56.1(a)(3) Statement ¶ 1). Defendant is a member of the Kendall County Special Education Cooperative (Cooperative). The purpose of the Cooperative is to provide certain special educational services. (Id., at ¶ 2). Tedd McCauley (McCauley), an employee of the Cooperative, took part in the individual educational plans (IEP) of plaintiff along with plaintiff's parents and representatives of the schools involved. (Id., at ¶¶ 5-6). Plaintiff's mother, Donna Munici (Munici), attended plaintiff's IEP staffings. She received copies of the IEP staffing minutes, which included the right to seek a hearing in the event that she wanted to contest the placement that plaintiff received. (Id., at ¶ 8). Munici never requested a hearing concerning plaintiff's placements. (Id., at ¶ 9).

At all relevant times, defendant had certain policies and procedures governing sexual harassment of students, including a Uniform Grievance Procedure and the Student Sexual Harassment Policy. (Plaint.'s 56.1(a)(3) Statement ¶¶ 3-6). Gordon Postlewaite (Postlewaite), the Assistant Superintendent for Administration and District Complaint Manager, had the responsibility of receiving all complaints of sexual harassment. (Id., at ¶¶ 7, 11). Postlewaite instructed supervisors to talk to the complainant to determine their version of the facts of the alleged sexual harassment. (Id., at ¶ 16).

In the fall of 1997, plaintiff was placed at the Guardian Angel School (Guardian) in Joliet, Illinois. (Def.'s 56.1(a)(3) Statement ¶ 10). Guardian is approximately a 45-minute drive from plaintiff's home. (Plaint.'s 56.1(a)(3) Statement ¶ 24). Defendant provided transportation to plaintiff to Guardian in a full-size school bus. The bus was driven by an employee of the defendant, Terry Johnson (Johnson). Plaintiff was the only passenger on the bus. (Def.'s 56.1(a)(3) Statement

2

¶ 11). As of the fall of 1997, Johnson had been employed by defendant for more than three years. Defendant had not received any complaints regarding Johnson's performance, and he was considered a good employee. (Id., at ¶ 12).

On November 19, 1997, plaintiff reported to his counselor at Guardian that Johnson had discussed sexual subjects with him, including showing plaintiff a picture of an older woman wearing a halter top, offering plaintiff a naked picture of the woman, informing plaintiff that the woman liked to have sex with young boys, and telling plaintiff that Johnson would pick plaintiff up at his home on the following Saturday to have sex with the woman at Johnson's home. (Def.'s 56.1(a)(3) Statement ¶ 19; Plaint.'s 56.1(a)(3) Statement ¶ 13). Plaintiff also testified at his deposition that Johnson talked about cheating on his wife, getting "blow jobs", and what positions he likes, and also made hand gestures indicating masturbation. (Plaint.'s 56.1(a)(3) Statement ¶ 28).

That same day, Liz Jones (Jones), a social worker with the Department of Children and Family Services (DCFS), visited plaintiff's home and informed Munici about the complaint. After Jones left plaintiff's home, plaintiff began crying and told his mother that Johnson had talked about things of a sexual nature and that he was scared that Johnson was going to come to their home on Saturday and that he would be at home alone. (Plaint,'s 56.1(a)(3) Statement ¶¶ 34-35).

On November 20, 1997, Hazel Jordan (Jordan), the Director of Transportation for defendant, was notified by Jones that DCFS was conducting an investigation into allegations made by plaintiff of an incident which took place while plaintiff was on the school bus the previous day. (Def.'s 56.1(a)(3) Statement ¶ 20). Nicholas McDonald, plaintiff's counselor at Guardian, also telephoned Jordan about improper conduct on the bus. (Plaint.'s 56.1(a)(3) Statement ¶ 33). Later that day, Jordan asked Johnson about the complaint. Johnson told Jordan that it involved a photograph seen

3

on the bus of a woman. Johnson showed Jordan a photograph of a clothed woman of approximately 18 years of age. (Def.'s 56.1(a)(3) Statement ¶ 21). Jordan informed John Markley (Markley), the Assistant Superintendent/Business Manager of defendant, that DCFS was investigating an incident involving plaintiff and Johnson. (Id., at ¶ 22).

That same morning, Munici called defendant and spoke with Jordan. Munici related to Jordan specific examples of Johnson's alleged discussions with plaintiff of a sexual nature and asked Jordan to provide plaintiff with a different bus driver. (Plaint.'s 56.1(a)(3) Statement ¶ 36).

Munici also telephoned McCauley of the Cooperative and informed him about the incident. (Plaint.'s 56.1(a)(3) Statement ¶ 42). McCauley immediately telephoned Jordan and informed her about Munici's and his conversation. Jordan informed McCauley that she was aware of the complaint. (Id., at ¶¶ 46, 50). Jordan did not document plaintiff's complaint in writing. (Id., at ¶ 65). Jordan contacted Markley, who indicated he would inform Postlewaite. Markley failed to contact Postlewaite. (Id., at ¶ 81). Markley did not contact plaintiff, Munici, or DCFS concerning the alleged incident. (Id., at ¶¶ 84, 86-87).

On or about November 20, 1997, a video/audio camera was placed on the bus driven by Johnson (Def.'s 56.1(a)(3) Statement ¶ 23). The position of the camera did not allow a view of the front of the bus driver. (Plaint.'s 56.1(a)(3) Statement ¶ 92). Plaintiff was not provided bus service for two days following his complaint. During this time, plaintiff engaged in self-destructive behavior. (Id., at ¶ 91). Once bus service began again, Johnson informed plaintiff to sit "back" to enable the camera to have a good view of plaintiff. (Def.'s 56.1(a)(3) Statement ¶ 24; Plaint.'s Response to ¶ 24). Jordan and Markley believed that the video camera would allow them to see what was taking place on the bus to protect everyone. In addition, defendant had a shortage of drivers so

4

the defendant "didn't have a lot of options." (Def.'s 56.1(a)(3) Statement ¶¶ 25-26). The video camera recorded either 45 minutes or 90 minutes, depending on the tape speed. Because Johnson picked plaintiff up after first driving other students on a different route, plaintiff's drive would not have always been recorded by the video tape. (Plaint.'s 56.1(a)(3) Statement ¶¶ 99-109). While Johnson continued to transport plaintiff, plaintiff engaged in self-destructive behavior. (Id., at ¶ 121).

Jordan viewed and listened to the tapes from the bus every day between November 20, 1997 and February 9, 1998. She observed plaintiff sitting near the center of the bus and did not observe any misconduct. (Def.'s 56.1(a)(3) Statement ¶ 27). On February 9, 1998, Jordan had the camera removed from the bus following a phone conversation with Jones in which Jones stated that there was "no finding" regarding the alleged incident. (Id., at ¶ 28).

That same day, Johnson allegedly was talking to plaintiff about "hand jobs" and told plaintiff that his pants looked baggy enough that he could stick his hand down the pants without unzipping them. Johnson proceeded to pull plaintiff toward him and placed his hand inside plaintiff's pants. (Plaint.'s Dep. pp. 121-126). Terry Waite (Waite), a DCFS investigator, informed Jordan of the second incident that occurred, including that Johnson made sexually explicit remarks to plaintiff. (Def.'s 56.1(a)(3) Statement ¶ 32; Waite's Dep. p. 57). Munici also called Jordan and informed her about the second incident. (Plaint.'s 56.1(a)(3) ¶ 134).

Munici also contacted Markley and informed him of the second incident. (Plaint.'s 56.1(a)(3) Statement ¶ 135). Neither Jordan nor Markley contacted Postlewaite. (Id., at ¶ 136). Markley spoke with Waite on one occasion; at which time, Waite refused to provide Markley with specific information about the incident. Markley attempted to gather more information by contacting Waite

5

four or five times, but Waite did not return Markley's telephone calls. (Def.'s 56.1(a)(3) Statement ¶ 33). On February 9, 1998, Johnson and plaintiff were separated. (Id., at ¶ 34). Plaintiff did not receive bus service for two weeks following the February complaint. (Plain.'s 56.1(a)(3) Statement ¶¶ 152-53). During this time, plaintiff again engaged in self-destructive conduct. (Id., at ¶ 155). After the two-week period, plaintiff was transported by a taxi cab.

In April 1998, Jordan received a letter from DCFS that stated the February 1998 complaint by plaintiff was "indicated". (Plaint.'s 56.1(a)(3) Statement ¶ 162). In May 1998, Jordan rated Johnson as an above-average employee. (Id., at ¶ 165). Johnson was not disciplined for any of the complaints. (Id., at ¶ 168).

Prior to September 1999, plaintiff was "placed" at Oswego High School for several classes in the morning and at Guardian in the afternoon. Plaintiff was "mainstreamed" at the high school for two behavior disorder classes and driver's education. (Def.'s 56.1(a)(3) Statement ¶¶ 39-40). On the second and third day of the next school year, Johnson transported plaintiff from Oswego High School to Guardian. No misconduct took place on the bus during the two days. (Id., at ¶ 37). Subsequently, the decision was made to return plaintiff to Guardian on a full-time basis. The decision was based in part on plaintiff's refusal to board the school bus that was being driven by Johnson. (Id., at ¶ 41; Alexander Bitto Dep. pp. 39, 70.). The decision to return plaintiff to Guardian on a full-time basis was made by McCauley, Munici, and Mike Matteson, the Dean of Students. (Def.'s 56.1(a)(3) Statement ¶ 44).

II. Analysis

Defendant argues that plaintiff's claims are barred for failure to exhaust his administrative remedies pursuant to the Individual with Disabilities Education Act (IDEA), 20 U.S.C. § 1415.

Defendant alleges that the IDEA applies to plaintiff's claims because his claims actually arise under the IDEA. Plaintiff argues that his claims are independent of any rights arising under the IDEA.

Under the IDEA, parents "may bring a complaint with respect with any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415 (b)(6). The IDEA provides, in part:

> Nothing in this chapter shall be construed to restrict the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, except that the filing of a civil action under such laws seeking relief that is available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter. 20 U.S.C. § 1415 (f).

Therefore, anyone who wants "relief that is available under" the IDEA must use the IDEA's administrative system, even if that person invokes a different statute. *Charlie F. v. Board of Educ. of Skokie School District 68*, 98 F.3d 989, 991 (7th Cir. 1996) (*Charlie F.*). The "available relief" does not depend on what relief plaintiff seeks but depends on the nature of the claim and the law governing the relief. *Charlie F.*, 98 F.3d at 992.

In the instant case, plaintiff alleges that he was sexually harassed and /or abused while on a bus operated by defendant. The genesis and manifestations of the allegations are not educational. Therefore, the allegations would not come within the purview of the IDEA. *See Franklin v. Frid*, 7 F.Supp.2d 920, 925 (W.D. Mich. 1998) ("a disabled child who is sexually abused ... by a teacher or school official–acts having no relationship to the <u>appropriate</u> education of a disabled child–would not come within the purview of the IDEA" [emphasis added]); *cf. Charlie F.*, 98 F.3d at 993 (genesis of problem was educational–the complaint dealt with acts that have an educational source and an

7

adverse educational consequence, including teacher inviting classmates to complain about plaintiff which resulted in teasing and ridicule by classmates).

Defendant also argues that plaintiff is unable to prove the elements of a Title IX cause of action.

A damage remedy does not lie under Title IX unless an official who has authority to address the alleged discrimination and to institute corrective action is "deliberately indifferent to the sexual harassment, of which [he or she has] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999) (*Davis*). A response that is "clearly unreasonable in light of the known circumstances" constitutes deliberate indifference. *Davis*, 526 U.S. at 648-49.

Here, material questions of fact exist whether defendant's response was clearly reasonable in light of the known circumstances. Defendant did not interview plaintiff to aid in its investigation. Defendant did place a camera on the bus and monitored the resulting audio and video recordings. Defendant made no other corrective measure based on its finding that no other improper actions took place, relying on the recordings. However, plaintiff has produced evidence that suggests that the recordings did not always record the entire time Johnson drove plaintiff to and from his school and that the camera would not record all of Johnson's actions and words. If the recordings that were monitored on a daily basis were incomplete, such would have become obvious to those viewing the recordings; and reliance on the incomplete recordings could be construed as clearly unreasonable in light of the allegations and the fact that Johnson and plaintiff were always alone on the bus. In addition, defendant failed to ask plaintiff about the allegations prior to the camera placement, and

8

plaintiff has presented evidence that defendant did not do so because defendant assumed that plaintiff was lying about the harassment. An incomplete investigation and assumptions made without inquiry also could constitute a clearly unreasonable response to plaintiff's allegations.

Plaintiff has also established that material questions of fact exist whether individuals with the authority to take corrective action, including Jordan and McCauley, had actual knowledge of the alleged sexual harassment and abuse and knew the extent of those allegations.

Questions of material fact also exist whether the alleged harassment was "so severe, pervasive, and objectively offensive" that it undermined and detracted from plaintiff's educational experience in that he was effectively denied equal access to school. *Davis*, 526 U.S. at 651. Plaintiff alleges that the sexual talk and gestures continued while he was on the bus, and the camera was present on almost a daily basis. In addition, the talk and gestures advanced to an incident in which Johnson attempted to touch plaintiff in a sexual manner. Defendant argues that the video recordings establish that plaintiff is not being truthful in these allegations. However, as stated above, plaintiff has established that questions of material fact exist as to the effectiveness of the video recordings, including the placement of the camera and the completeness of the recordings. In addition, plaintiff was denied transportation for at least a two-week period and alleges that he failed to stay in attendance at Oswego High School because he was being transported to the high school by Johnson. Viewing all the evidence in favor of the plaintiff, questions of material fact exist whether the alleged conduct was severe and pervasive enough to deprive plaintiff equal access to school. Accordingly, plaintiff's Title IX claim survives summary judgment.

To state a claim for retaliation under Title IX, plaintiff must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal link between

the protected activity and the adverse action. *Adams v. Lewis Univ.*, 1999 WL 162762 (N.D.Ill. Mar. 12, 1999). Defendant argues that plaintiff has not established a causal link between his complaints of sexual harassment and an adverse action.

Plaintiff has established material questions of fact exist whether plaintiff's complaint of harassment caused defendant to cease bus service for a two-week period immediately following the last complaint of harassment. Accordingly, plaintiff's retaliation claim survives summary judgment.

Last, defendant argues that plaintiff is unable to prove his claim for intentional infliction of emotional distress (IIED). Defendant avers that because plaintiff cannot prove deliberate indifference, he is unable to prove that defendant was guilty of extreme and outrageous conduct or that it intentionally or recklessly caused severe emotional distress. As stated above, plaintiff has established that questions of material fact exist whether defendant's response constituted deliberate indifference. Accordingly, defendant's argument fails, and plaintiff's IIED claim survives summary judgment.

III. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is denied.

Dated: June 7, 2001

JOHN W. DARRAH
United States District Judge